IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GREGORY HUBBARD<br>a/k/a Abdullah G. Hubbard, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  Civ. No. 09-006-SLR<br>) |
| WARDEN PERRY PHELPS, | )<br>) |
| Defendant. | ) |

## MEMORANDUM ORDER

At Wilmington this ۱5ᵗʰ day of September, 2009, having considered plaintiff's
pending motions;

IT IS ORDERED as follows:

1. **Introduction**. Plaintiff Gregory Hubbard ("plaintiff"), an inmate at the James
T. Vaughn Correctional Center ("VCC), Smyrna, Delaware, filed this civil rights action
pursuant to 42 U.S.C. § 1983. His complaint alleges that he was transferred from
general population to isolation where he remained for ninety-seven days in violation of
his constitutional rights. On April 22, 2009, the court dismissed the complaint on the
grounds that the ninety-seven days in isolation did not implicate a protected liberty
interest and, hence, failed to state a constitutional claim on the facts alleged. (D.I. 12)
One week later, the court received a letter from plaintiff asking for an enlargement of
time to file a response to the court's memorandum order. (D.I. 13) When he received
no response, plaintiff sent a second letter, received June 25, 2009, again asking to
respond to the order and for an enlargement of time to file an amended complaint. (D.I.
17) He also submitted a proposed amendment. The court construes the letter as a

motion for reconsideration as the proposed amended complaint asks the court to

"rescind its April 22, 2009 order dismissing the original complaint as frivolous." (*Id.*)

2. **Standard of Law.** The purpose of a motion for reconsideration is to "correct

manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood*

*Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Accordingly,

a court may alter or amend its judgment if the movant demonstrates at least one of the

following: (1) a change in the controlling law; (2) availability of new evidence not

available when summary judgment was granted; or (3) a need to correct a clear error of

law or fact or to prevent manifest injustice. *See id.*

3. **Discussion.** Plaintiff remained in isolation for ninety-seven days and, on May

21, 2008, was transferred to protective custody where he remains to date. Plaintiff

contends the only difference between isolation and protective custody is the location,

and that both are subjected to maximum security housing rules.[1] Plaintiff compares the

general population housing conditions to protective custody conditions, and argues that

his current sixteen month housing assignment under conditions identical to isolation

implicates a protected liberty interest, states a claim, and requires amendment of the

complaint. Plaintiff once again complains of the classification system in place at the

---

[1]Plaintiff alleges the rules prohibit the following: (1) cleaning a cell with a mop
and broom; (2) access to religious services and spiritual counseling; (3) control over
lighting which causes lack of sleep and sensory deprivation; (4) receipt of properly
rationed hot meals; (5) opportunity to take a shower except three times per week; (6)
opportunity to exercise, other than to walk around a small cage one hundred thirty-five
minutes per week; (7) leaving cell unless handcuffed and shackled, which occurs at
least ten times per week; (8) social interaction; (9) privacy during sick call or doctor
visits; (10) personal phone calls except for three per month; and (11) access to
educational and therapeutic programs.

-2-

VCC and that his removal from the general population affects the opportunity for early release.

4. Prisoners retain a liberty interest with respect to state imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court held that an inmate's assignment to disciplinary segregation for thirty days did not impose an "atypical, significant deprivation" that implicated an inmate's liberty interest. *Id.* at 486. Notably, the court found that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest. *Id.* at 486-87.

5. Rather than the ninety-seven days as alleged in the complaint, plaintiff now alleges that he has spent sixteen months in protective custody. While his length of time has increased, plaintiff has yet to state a due process claim. The Third Circuit has held that an inmate sentenced to an aggregate of nine hundred thirty days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under *Sandin*. *See Young v. Beard*, 227 F. App'x 138 (3d Cir. 2007) (not reported). To date, plaintiff has spent approximately four hundred eighty days in protective custody.

6. The court recognizes that the circumstances of a particular case may sometimes result in segregation, working an atypical and significant hardship on an inmate so that it does implicate a protected liberty interest. *See, e.g., Wilkinson v.*

-3-

.

*Austin*, 545 U.S. 209, 222-24 (2005) (indefinite placement in Ohio's "supermax" facility and disqualification of an eligible inmate for parole consideration imposes "atypical and significant hardship within the correctional context" where conditions ). However, plaintiff's proposed amendment does not contain allegations that he will be housed in protective custody for an indeterminate time or that the housing assignment affects the duration of his sentence.[2] Moreover, as noted in *Sandin*, the decision to place plaintiff in protective custody is well within the discretion of prison officials.

7. Plaintiff has failed to demonstrate any of the grounds to warrant reconsideration of the court's April 22, 2009 order dismissing his case as frivolous. For the above reasons, the court will deny the motions for reconsideration and to amend. (D.I. 13, 17)

8. Plaintiff voices his concerns with the manner in which monies are deducted from his prison trust account by the VCC Business Office ("Business Office") in making filing fee payments. (D.I. 16) He asks the court to clarify and confirm its filing fee assessment order. The clerk of court is directed to provide plaintiff with a copy of the January 15, 2009 filing fee assessment order. (D.I. 4) Any accounting issues plaintiff may have with the Business Office shall be resolved between plaintiff and the Business Office, without this court's intervention.

---

[2]Although plaintiff contends that his transfer from general population affects the possibility of early release, he has no liberty interest in the same. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (prison officials have discretion over prisoner classifications and prisoners have no legitimate due process concerns in them); *see also Rublee v. Fleming*, 160 F.3d 213, 214 (5th Cir. 1998) (no liberty interest in early release for completion of drug abuse program).

-4-

9. **Conclusion**. Plaintiff's motion for reconsideration and motions to amend are **denied**. (D.I. 13, 17) Plaintiff's request for assistance with the filing fee assessment is **granted** to the extent that the clerk of court is directed to provide plaintiff with a copy of the January 15, 2009 filing fee assessment order (D.I. 4) and **denied** in all other respects. (D.I. 16)

UNITED STATES DISTRICT JUDGE